UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID L. AMES, and PAULINE C. AMES,

                Plaintiffs,

-vs-                              Case No.  5:04-cv-359-Oc-10GRJ

WINNEBAGO INDUSTRIES, INC., LAZY
DAYS RV CENTER, INC., and
FREIGHTLINER, LLC.,

                Defendants.

_____

# **O R D E R**

This is a breach of warranty case brought by the purchasers of a Winnebago recreational vehicle.  The Defendants are the manufacturer and the retail seller of the recreational vehicle.  The case is before the Court for consideration of Defendant Lazy Days RV Center, Inc.'s Motion for Summary Judgment (Doc. 29) and Defendant Winnebago Industries Inc.'s Motion for Summary Judgment (Doc. 30), to which the Plaintiffs have responded (Docs. 40, 41).[1]  The motions are ripe for review and the Court concludes that Defendant Lazy Days RV Center, Inc's motion is due to be granted and

---

[1]     All of the Plaintiffs' claims against Freightliner LLC have been dismissed by the Court.  See Doc. 19, Order.

     Also before the Court is the Defendants' Motion to Strike Sham Affidavits of the Plaintiff (Doc. 44).  This motion is without merit and is due to be denied.

Defendant Winnebago Industries Inc.'s motion is due to be granted in part and denied in part.

## BACKGROUND

On January 29, 2002, the Plaintiffs, David and Pauline Ames, purchased a new 2002 Winnebago Journey recreational vehicle from Defendant Lazy Days RV Center, Inc. (Lazy Days) for $157,841.00.[2]   In February of 2002, when the Plaintiffs took delivery of their recreational vehicle home from Lazy Days, they first noticed a problem with the steering.[3] According to Mr. Ames, "[y]ou ha[d] to fight with this thing to steer it down the road and keep it [o]n the road in between your lanes."[4]

From the time the Plaintiffs purchased their recreational vehicle until July of 2003, they took their vehicle to have it repaired on nearly twenty different occasions.[5]  Repairs were made by various service centers, including Lazy Days, and the repairs were needed to address various problems with the Plaintiffs' recreational vehicle, including peeling wallpaper, a leaking showerhead, a leaking hydraulic room slide, a noisy heater, and the

---

[2]    Doc. 32, Part 3, Deposition of David L. Ames, pg. 29, 32; Doc. 32, Part 7, Buyers Order.  The delivery date of the vehicle was set for January 29, 2002, but Mr. Ames testified that he took delivery of the vehicle on February 1 or 2, 2002.

[3]    Doc. 32, Part 5, Deposition of David L. Ames, pg. 101.

[4]    Id.

[5]    Doc. 31, Parts 7-9, Exhibits to Deposition of William Jay Zembower; Doc. 32, Part 10, Exhibits to Deposition of David L. Ames.

steering problem, among other things.  The repairs were made at no cost to the Plaintiffs because they were covered by a warranty.

Winnebago Industries, Inc. (Winnebago) provided the Ames with a "2002 New Vehicle Limited Warranty" on the recreational vehicle they purchased from Lazy Days.[6] The basic warranty period began on the date the Plaintiffs purchased the vehicle and lasted for twelve months or 15,000 miles, whichever occurred first.  The warranty stated that any implied warranties were limited to the duration of the written warranty. Additionally, the warranty included the following limitations:

> THE PERFORMANCE OF REPAIRS IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. WINNEBAGO SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOSS OF TIME, INCONVENIENCE, OR OTHER CONSEQUENTIAL DAMAGE INCLUDING EXPENSE FOR GASOLINE, TELEPHONE, TRAVEL, LODGING, LOSS OR DAMAGE TO PERSONAL PROPERTY, OR LOSS OF REVENUE RESULTING FROM BREACH OF THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY.[7]

Under the warranty, the chassis, wheels, tires, service items (such as windshield wiper blades, lubricants, and fluids), filters, and adjustments were excluded from coverage. Winnebago warranted that "[a]ny part of the vehicle subject to the warranty which is found to be defective in material or workmanship, will be repaired or replaced at Winnebago

---

[6]     Doc. 31, Part 10, pg. 7, Limited Warranty.

[7]     The quoted language was in capital letters in the original warranty.

Industries' option upon notice of the defect without charge to the customer for parts or labor."

The "Buyers Order" reduced the Plaintiffs' purchase of their recreational vehicle from Lazy Days to writing.[8]   The front side of the Buyers Order was signed by the Plaintiffs under a statement which read: "I acknowledge receipt of a copy of this order, and I have read, understand, and agree with the back of this agreement."  The front side of the Buyers Order also contained the following statement:

> This agreement contains the entire agreement and understanding between you and me.  No statements, representations, warranties or inducements, verbal or written, have been made which have been relied upon by me which are not specifically written in this agreement.  All discussions, negotiations, representations, statements and inducements which are a part of the basis of the bargain between you and me and which are important to me are written in this contract and all parts of this contract are agreed by me to be a part of the basis of the bargain between you and me.

The back side of the Buyers Order contained an "Exclusions of Warranties" section which provided that:

> [THE PLAINTIFFS] UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, ARE EXCLUDED BY [LAZY DAYS] FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. [THE PLAINTIFFS] UNDERSTAND THAT THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT WHICH IS PART OF THE UNIT OR THIS SALE.

---

[8]     Doc. 32, Part 7, Buyers Order.

The Buyers Order also contained a section labeled "<u>MANUFACTURERS WARRANTIES</u>,"

which stated:

> <u>MECHANICAL PROBLEMS MAY ARISE WITH ANY VEHICLE. [THE PLAINTIFFS] UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASED, OR ANY APPLIANCE(S) OR COMPONENT(S). [THE PLAINTIFFS] UNDERSTAND THAT THE WARRANTY OR WARRANTIES [THE PLAINTIFFS] RECEIVED AT THE TIME OF SALE ARE [THEIR] EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS THAT [THEY] MIGHT HAVE WITH THE UNIT OR ANY APPLIANCE(S) OR COMPONENT(S). [THE PLAINTIFFS] AGREE THAT NO OTHER REMEDIES ARE AVAILABLE TO [THEM], INCLUDING BUT NOT LIMITED TO, REVOCATION OF ACCEPTANCE AND RESCISSION.</u>

The above-quoted language from the Buyers Order was in all capital letters and underlined

(as shown above).  Furthermore, the two sections quoted above were the only sections on

the back side of the Buyers Order that were written in underlined and capital letters (the

back of the Buyers Order contained twenty sections).[9]  Despite the language in the Buyers

Order, Mr. Ames testified that:

> When we purchased the Winnebago RV, Lazy Days told us that it could do any repair work at no cost for the first year.  We were given a false sense of security from Lazy Days and relied on that sense of security in deciding to make this purchase.  We did not see or understand any disclaimers or limitations of seller warranties.[10]

---

[9]      It should be noted that the topic headings for each paragraph were in capital letters, but not underlined, and there were also three sentences on the back side of the Buyers Order which were in capital letters but not underlined.

[10]      Doc. 40, Part 3, Affidavit of David Ames.

William Jay Zembower, the Plaintiffs' expert witness in this case, testified as follows.[11] Mr. Zembower was retained by the Plaintiffs to evaluate their recreational vehicle and address the Plaintiffs' two major concerns about their recreational vehicle – (1) "the handling characteristics, steering issues, the way it handled, its attitude on the road" and (2) the fact that the recreational vehicle has spent so many days being serviced.[12] On June 23, 2003, Mr. Zembower inspected and test-drove the Plaintiffs' recreational vehicle.[13] Mr. Zembower reported that the "test drive reveal[ed] that excessive wandering [wa]s evident which [wa]s not acceptable in [his] opinion, the steering was observed to [be] very busy and not at normal condition."[14]   The "excessive wandering" was not safe and made it "very difficult to control [the recreational vehicle] on the road."[15] Mr. Zembower believed that "the suspension [wa]s not loaded or laden to afford proper steering control."[16] In addition to the

---

[11]     Doc. 31, Part 3, Deposition of William Jay Zembower, pg. 4.

[12]     Id. at 19.

[13]     Id. at 31.

[14]     Doc. 31, Part 4, Deposition of William Jay Zembower, pg. 56; Part 7, Exh. 1, Report of William Jay Zembower.

[15]     Doc. 31, Part 4, Deposition of William Jay Zembower, pg. 58.  Mr. Zembower described "excessive wandering" in a recreational vehicle as a vehicle which requires "constant driving and steering to keep the [recreational vehicle] in the lane and keep it from wandering left to right and try to keep the recreational vehicle in the center lane."  Id. at 61.

[16]     Doc. 31, Part 5, Deposition of William Jay Zembower, pg. 97.

"excessive steering" problem, there was a leak in the bedroom slide out hydraulic system.[17] After reviewing service records for the Plaintiffs' recreational vehicle, Mr. Zembower concluded that the vehicle had been unavailable for use by its owners for a total of 92 days, or for nearly 25% of the time the vehicle was owned by the Plaintiffs.[18] Mr. Zembower also concluded after reviewing the documents that the defects in the vehicle existed "at the time of delivery to the dealer and prior to retail delivery."[19] Mr. Zembower did not quantify the loss in value of the vehicle caused by the various problems with the vehicle, but he did conclude that the recreational vehicle had suffered "substantial loss of value, use and safety based on the documents reviewed and conditions observed."[20]

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In Celotex Corp. v. Catrett, the Supreme Court recognized that "the plain language of Rule

---

[17]   Doc. 31, Part 4, Deposition of William Jay Zembower, pg. 76-80.  HWH was the manufacturer of the hydraulics and provided a limited warranty for them.  Id. at 77.  Some recreational vehicles contain "slide rooms" which are put into the vehicles to enhance the size of the living facility when the vehicle is parked.  Id. at 78.

[18]   Doc. 31, Part 7, Exh. 1, Report of William Jay Zembower.

[19]   Id.

[20]   Doc. 31, Part 5, Deposition of William Jay Zembower, pg. 107; Part 7, Exh. 1, Report of William Jay Zembower.

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[21]   The moving party bears the initial burden of establishing the nonexistence of a triable fact issue.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[22]   The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[23]

## DISCUSSION

I. CLAIMS AGAINST WINNEBAGO INDUSTRIES

The following claims are pending against Defendant Winnebago: (1) Breach of Express Warranty; (2) Breach of Implied Warranties; (3) Breach of Express Warranty in Violation of the Magnuson Moss Warranty Act; and (4) Breach of Implied Warranties in Violation of the Magnuson Moss Warranty Act.  The Court will address each claim in turn.

---

[21]   477 U.S. 317, 322 (1986).

[22]   Rollins v. Techsouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).

[23]   Celotex, 477 U.S. at 324.

8

A. BREACH OF EXPRESS WARRANTY

Winnebago claims that it honored its Limited Warranty by performing all repairs requested by the Plaintiffs at no charge.  However, the testimony of Mr. Ames and Mr. Zembower suggest otherwise.  In particular, Mr. Ames and Mr. Zembower testified that the Plaintiffs' recreational vehicle continues to have an "excessive wandering" problem with its steering, even after the Plaintiffs attempted to have the defect repaired on several occasions by Lazy Days, Freightliner Custom Chassis Corporation, and Sterling Truck of Tampa.

Winnebago also argues that summary judgment should be granted because the Plaintiffs have no proof of any breach of warranty damages, an essential element of their claim.  This argument is also without merit.  Florida law provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."[24]  Both Mr. Zembower and Mr. Ames have testified that the value of the Plaintiffs' recreational vehicle has been substantially diminished due to the steering defect.

Accordingly, since a genuine issue of material fact exists as to whether Winnebago breached the limited warranty, and the Plaintiffs have provided sufficient evidence of

---

[24]     Fla. Stat. § 672.714(2).

damages due to the breach, summary judgment with respect to the Plaintiffs' breach of express warranty claims against Winnebago is due to be denied.[25]

## B. BREACH OF IMPLIED WARRANTIES

Under Florida law, the Plaintiffs are required to prove privity of contract between the Plaintiffs and Winnebago in order to recover under a theory of breach of implied warranty against Winnebago.[26]  The Plaintiffs have not presented any evidence that they were in privity with Winnebago – they simply argue that the Florida cases extending the privity requirement to non-personal injury cases were wrongly decided, and an implied warranty of merchantability arises under Florida's Uniform Commercial Code because Winnebago, a vehicle manufacturer, is a "seller" within the meaning of the Code.  The Court is not persuaded by the Plaintiffs arguments and must follow Florida law.  Accordingly, since the Plaintiffs have not presented evidence that they are in privity of contract with Winnebago, summary judgment with respect to the Plaintiffs' breach of implied warranty claims against Winnebago is due to be granted.[27]

---

[25]     The Magnuson Moss Warranty Act allows any consumer who is damaged by the failure of a warrantor to comply with its obligation under a written or implied warranty to file a suit for damages in federal court.  15 U.S.C. § 2310(d)(1).  Since a genuine issue of fact exists as to whether Winnebago fulfilled its obligation under the written warranty, the Plaintiffs' express warranty claim under the Magnuson Moss Warranty Act also survives summary judgment.

[26]     See Kramer v. Piper Aircraft Corp., 520 So.2d 37 (Fla. 1988); Affiliates for Evaluation and Therapy, Inc. v. Viasyn, 500 So.2d 688 (Fla. 3d DCA 1987); GAF Corp v. Zack Co., 445 So.2d 350 (Fla. 3d DCA 1984); Baker v. Danek Medical, 35 F.Supp.2d 875 (N.D. Fla. 1998).

[27]     Summary judgment with respect to the Plaintiffs' breach of implied warranty claim brought under the Magnuson Moss Warranty Act is due to be granted because "the question of
(continued...)

II. CLAIMS AGAINST LAZY DAYS RV CENTER

The following claims are pending against Defendant Lazy Days: (1) Revocation of Acceptance; (2) Breach of Express Warranty; (3) Breach of Implied Warranties; (4) Breach of Express Warranty in Violation of the Magnuson Moss Warranty Act; and (5) Breach of Implied Warranties in Violation of the Magnuson Moss Warranty Act.  The Court will address each claim in turn.

A. REVOCATION OF ACCEPTANCE

With respect to revocation of acceptance, Florida law provides the following:

(1) The buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him if she or he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) Without discovery of such nonconformity if her or his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if she or he had rejected them.[28]

---

[27](...continued)
whether or not privity is a prerequisite to a claim for breach of implied warranty under the [Magnuson Moss Warranty Act] hinges entirely on the applicable state law," and under state law, the Plaintiffs have not shown that they are in privity of contract with Winnebago.  See Mesa v. BMW of North America, LLC, 904 So.2d 450, 458 (Fla. 3d DCA 2005).

[28]     Fla. Stat. § 672.608.

Although Florida law provides for revocation of acceptance as a remedy for buyers in certain circumstances, when a dealer disclaims all warranties there is no basis to later revoke acceptance.[29] Accordingly, revocation of acceptance is not an available remedy for the Plaintiffs in the instant case if Lazy Days properly disclaimed all warranties.

Florida law authorizes sellers to exclude warranties, both express and implied, in the sale of goods.[30] To properly disclaim an implied warranty of merchantability, "the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous."[31] "A term or clause is 'conspicuous' when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. . . Whether a term or clause is conspicuous or not is for decision by the court."[32]

---

[29]    See Frank Griffin Volkswagen, Inc. v. Smith, 610 So.2d 597, 599 (Fla. 1st DCA 1992) ("Where a dealer has properly disclaimed all warranties, the delivering, presenting, or explaining of a manufacturer's warranty, without more, does not render the dealer a co-warrantor by adoption, . . . nor does it create a contractual obligation which can serve as a basis for a buyer's later revocation of acceptance.").

[30]    See Fla. Stat. § 672.316.

[31]    Fla. Stat. § 672.316(2).

[32]    Fla. Stat. § 671.201(10).

In this case, Lazy Days effectively disclaimed any express or implied warranties in the Buyers Order signed by the Plaintiffs.  The "Exclusion of Warranties" section is conspicuous because it is the only language on the back of the Buyers Order, other than the "Manufacturers Warranties" section, which is underlined and in all capital letters.  In addition, in the absence of any ambiguity on the face of the Buyers Order, the actual language used in the Buyers Order is the best evidence of the intent of the parties, and the plain meaning of that language controls.[33]  Therefore, the language in the Buyers Order which clearly disclaimed any warranties and stated that the Buyers Order contained the parties' entire agreement controls.  The fact that the Plaintiffs do not remember reading the "Exclusion of Warranties" section of the agreement has no bearing on the validity of the clause since it is conspicuous.[34]  Accordingly, the Plaintiffs have no basis to revoke acceptance of the recreational vehicle.

The Plaintiffs contend that they are afforded statutory warranty protection under Florida law which could not be disclaimed by Lazy Days.  Florida Statute Section 320.835 requires dealers of recreational vehicles to warrant "[t]hat any modifications or alterations made to the mobile home or recreational vehicle by the dealer or authorized by the dealer

---

[33]     See Hamilton Const. Co. v. Board of Public Instruction of Dade County, 65 So.2d 729, 731 (Fla. 1953) ("The parties selected the language of the contract. Finding it to be clear and unambiguous, we have no right--nor did the lower court--to give it a meaning other than that expressed in it. To hold otherwise would be to do violence to the most fundamental principle of contracts.").

[34]     See Monsanto Agr. Products Co. v. Edenfield, 426 So.2d 574, 578 (1st DCA 1982).

shall be free from substantial defect.  Alterations or modifications made by a dealer shall relieve the manufacturer of warranty responsibility only as to the item altered or modified." The Court concludes, however, that any claim based upon this statutory warranty is without merit since the Plaintiffs do not claim that a "modification or alteration" made by Lazy Days contained a "substantial defect."  In fact, the record demonstrates that the steering defect complained of by the Plaintiffs was in existence before Lazy Days attempted to make any repairs.  Since there are no warranties on which to base the Plaintiffs' revocation of acceptance claim, summary judgment with respect to this claim is due to be granted.

B. BREACH OF EXPRESS WARRANTIES

As previously stated, the Plaintiffs have not presented any evidence that Lazy Days provided them with any express warranties with respect to their recreational vehicle. Accordingly, summary judgment with respect to any claims for breach of express warranties under Florida law or the Magnuson Moss Warranty Act is due to be granted.

C. BREACH OF IMPLIED WARRANTIES

As previously stated, Lazy Days effectively disclaimed any implied warranties in the Buyers Order.  Accordingly, summary judgment with respect to any claims for breach of implied warranties under Florida law or the Magnuson Moss Warranty Act is due to be granted.[35]

---

[35]     The Magnuson Moss Warranty Act defines an "implied warranty" an implied warranty under State law.  15 U.S.C. § 2301(7).  Accordingly, since there is no implied warranty under Florida law in this case, none exists under federal law.

## CONCLUSION

Upon due consideration, and for the foregoing reasons, it is ordered that:

(1) Defendant Lazy Days RV Center, Inc.'s Motion for Summary Judgment (Doc. 29) is GRANTED;

(2) Defendant Winnebago Industries Inc.'s Motion for Summary Judgment (Doc. 30) is GRANTED IN PART AND DENIED IN PART, as set forth in this order;

(3) the Defendants' Motion to Strike Sham Affidavits of the Plaintiff (Doc. 44) is DENIED;  and

(4) the Clerk is directed to withhold the entry of judgment pending resolution of this case as a whole.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 14th day of October, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record